IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| **DIANN DUNN,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **7:02-cv-0889-UWC** |
| **PROVIDENT LIFE & ACCIDENT** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| Defendant. | ) | |

**FINDINGS OF FACT
AND
CONCLUSIONS OF LAW**

In this case arising under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"), Plaintiff Diann Dunn claims that Defendant Provident Life & Accident Insurance Company ("Provident") unlawfully denied her claim for long-term disability benefits ("LTDB"). Based on the parties' evidentiary submissions and the Statement of Agreed and Disputed Facts, (R., Doc. 23), the Court makes the following Findings of Fact and Conclusions of Law.

**FINDINGS OF FACT**

1. On October 7, 1996, Plaintiff worked for Mercedes-Benz U.S. International, Inc., ("Mercedes-Benz") at its vehicle manufacturing facility in Vance, Alabama. Plaintiff was assigned to the Paint Shop.

2. At all material times, Mercedes-Benz paid premiums to Provident for sickness and disability insurance covering its employees, including Plaintiff. Provident pays the claims from its own funds. The denial of a claim therefore inures to Provident's financial benefit.

3. Under the terms of the Provident policy:

You are disabled if due to your sickness or injury you meet
the following definition of disability:

> **Own Occupation Disability Definition.** During the own occupation period, you are disabled from your own occupation if due to sickness or injury you:
> (1) are unable to earn at least the Own Occupation Income Level; or
> (2) are unable to perform each of the material duties of the occupation that you regularly perform for the employer . . ..
>
> **Any Occupation Disability Definition.** During the Any Occupation period, you are disabled from any occupation if due to sickness or injury you:
> (1) are unable to earn at least the Any Occupation Income level while working in any occupation; or are unable to perform each of the material duties of any occupation for which you are reasonably fitted by education, training, or experience.
>
> . . .
>
> There is a benefit offset for, among other things, Social Security total disability payments.

(R., Doc. 25, Pl.'s Evidentiary Submissions at pp. 886, 889.)

4. The maximum period for "own occupation" disability benefits ("OODB") under the Provident insurance policy is two years.

5. If Plaintiff remains totally disabled at the expiration of the OODB period, her

benefits would continue until she reaches the age of sixty-five (65) while so disabled.

6. On November 21, 1997, while lifting and bending at work, Plaintiff sustained an injury to her back.[1] Nearly three months later, she underwent a L4-5 diskectomy. Her claim for worker's compensation benefits was denied based on a finding that her back problem was not work-related.

7. In February 1998, Plaintiff had back surgery again. Plaintiff's doctor released Plaintiff to return to "light duty" work on April 27, 1998. Provident paid Plaintiff short term disability benefits ("STDB") during the period of this illness.

8. Plaintiff returned to "light duty" work in May, 1998, and she worked approximately three weeks until May 30, 1998. Plaintiff has been unable to work, and has not worked, since that time.

9. On July 20, 1998, Plaintiff's treating physician, Dr. Rick L. McKenzie of West Alabama Neurological Spine Consultants, Inc., opined that Plaintiff's disability was permanent and recommended medical retirement.

10. At all material times, Plaintiff has been willing to work. For example, in November 1998, Plaintiff indicated to a Provident representative that she was willing to try working at a light or sedentary job; but she would not remain in one position for long periods of time and had to alternate between sitting and standing.

11. On November 18, 1998, Provident approved Plaintiff for two years of

---

[1] Plaintiff had undergone back surgery in February 1996– a microdiskectomy at left L5-S1.

OODB.

12. Plaintiff subsequently applied to Provident for "any occupation" disability benefits ("AODB"), claiming that she was totally disabled for work in any occupation.

13. Plaintiff's condition has not improved since November 18, 1998.

14. Dr. John Brockington, a neurologist in Tuscaloosa, became her treating physician in 1999.

15. Based on an MRI of her spine, Dr. Brockington opined that Plaintiff suffers from mild degeneration, scarring from surgery, and lumbar arachnoiditis.[2]  He opined that Plaintiff is severely impaired and unable to work. In his view, Plaintiff's problem is not a condition producing severe, intractable pain.

16. In July 2001, Dr. Brockington wrote to Provident:

> [Plaintiff] is a patient of mine, who I have been treating for chronic low back pain due to lumbosacral arachnoiditis. This condition produces significant chronic pain, loss of range of motion, and has resulted in her inability to perform any job on a consistent regular basis. She is on numerous medications, but has persistent symptoms despite this . . ..

(R., Doc. 16. at Ex. 37.)

17. Provident investigated Plaintiff's claim for AODB to support its foregone conclusion to deny the claim. When it was reported that Plaintiff had been seen coaching her daughter's softball team "without any noticeable pain or discomfort,"

---

[2] Arachnoiditis is the inflammation of the fibrous membrane surrounding the spinal cord. The arachnoid membrane forms the middle of three coverings of the central nervous system. *See* PDR MEDICAL DICTIONARY 121 (Marjory Spraycar ed., Medical Economics 1995).

Provident hired video surveillance investigators on three separate occasions to confirm the report, and, more generally, to confirm that Plaintiff's daily activities were inconsistent with her claim of long term disability. These investigations failed to confirm either that Plaintiff had recently coached her daughter's softball team, or that Plaintiff's daily activities were inconsistent with her claim of permanent disability.

18. Early on in the investigative process, on June 15, 2000, Provident's case handler, Jonathan Etchison, recommended that the claim be processed superficially and that at the end of his recommended stages,[3] the file be closed and the claim denied.

19. Provident ostensibly relied on the opinions of three physicians to deny Plaintiff's claim: Dr. George Seiter, Dr. John M. Bolinger, and Dr. Burton McDaniel. Dr. Seiter, an orthopedist, could not dispute the treating physician's diagnosis of arachnoiditis. Dr. Bolinger, a psychiatrist, was of the opinion that "[Plaintiff's] symptoms of depression in and of themselves are not disabling, but it is the discomfort and pain experienced as a result of her degenerative joint disease and lumbar arachnoiditis that are the primary difficulties prohibiting the [Plaintiff] from returning to work." (R., Doc. 25, Pl.'s Evidentiary Submissions at Ex. 1, p. 498.) Dr. Burton concluded that Plaintiff's "primary impairment appears to be psychological." (*Id.* at p. 505.)

20. The consultative opinions of Drs. Seiter, Bolinger, and McDaniel, singly and

---

[3] Specifically, he recommended 1) updated medicals, 2) additional surveillance, 3) clinical review, 4) vocational referral for a transferrable skills analysis ("TSA"), 5) advance pay to Plaintiff through the end of the OODB period, and 6) closing the case.

in combination, are an insufficient basis on which to deny Plaintiff's AODB claim.

21.   In August 2000, the Social Security Administration approved Plaintiff for Social Security Benefits.

22.   On January 1, 2001, Provident notified Plaintiff it denied her application for AODB.  Plaintiff pursued an administrative appeal of the denial.   Provident denied the appeal for a final time on January 3, 2002.

23.   Provident's denial of Plaintiff's claim for AODB was arbitrary and capricious.

24.   Plaintiff is entitled to monthly AODB of $2,078.00, less an offset for Social Security disability benefits in the approximate amount of $720.00

## CONCLUSIONS OF LAW

1.   This court has jurisdiction of this action.

2.   The heightened arbitrary and capricious standard of review is applicable.  *Levison v. Reliance Standard Life Ins. Co.,* 245 F.3d 1321 (11th Cir. 2001); *Buckley v. Metro. Life*, 115 F.3d 936, 939 (11th Cir. 1997);  *Maracek v. BellSouth Telecomm. Inc.,* 49 F.3d 702 (11th Cir. 1995).

3.  It was arbitrary and capricious for  Provident to accord little  deference to the opinions  of Plaintiff's treating physician, while according total deference to consultative physicians who never examined Plaintiff and whose opinions were questionable and inconsistent with each other.

The  failure  of  Provident  to  consider  the  Social  Security  Administration's

determination that Plaintiff is totally disabled in determining whether she is entitled to "any occupation" disability benefits is arbitrary and capricious, especially where, as here, it utilized that determination in offsetting Plaintiff's indubitable entitlement to "Own Occupation" disability benefits.  *Kirwan v. Marriott Corp.,* 10 F.3d 784, 789 n.32 (11th Cir. 1994).

## CONCLUSION

By separate order, judgment will be entered in favor of Plaintiff and against Provident.

Done this 30th day of March, 2005.

_____
U.W. Clemon
Chief United States District Judge